## WITTSTRUCK, Respondent, v. LEE, Appellant.

### (252 N. W. 874.)

(File No. 7347.   Opinion filed February 17, 1934.)

*Hitchcock, Sickel & Whiting,* of Mitchell, for Appellant.
*Miller & Shandorf,* of Mitchell, for Respondent.

CAMPBELL, J.   On November 1, 1929, somewhat after 5 p. m., plaintiff, driving his Model A Ford roadster in a westerly direction on U. S. Highway No. 16 (a graded graveled road, running east and west at the point involved), suffered a collision about two miles west of Mt. Vernon, S. D., with a fifteen-passenger bus, owned by defendant and operated by his employee, which was traveling east on the same highway.   As a result of the collision, plaintiff's automobile was completely wrecked and he himself was

severely injured. Claiming that the collision was caused by the negligence of defendant's driver, plaintiff instituted an action for the recovery of $34,513.15, including the loss of his car, expenditures for hospital, medical, and dental services, loss of wages, and damages for the personal injury. The allegations of the complaint with reference to negligence are as follows:

"(a) That the defendant, by and through his agent and employee, was driving and operating his said large automobile bus at a careless and imprudent speed, and at a greater rate of speed than was reasonable and proper, and without due regard to the traffic on said highway, and at a speed so as to endanger the life and limb and property of the plaintiff, and of others who might be on said public highway.

"(b) That the plaintiff states on information and belief, and so charges the fact to be, that immediately before and at the time of said collision, the defendant, by and through his agent and employee was driving his said large automobile bus at a greater rate of speed than forty miles per hour.

"(c) That immediately before and at the time of said collision, the plaintiff was operating and driving his said automobile in a westerly direction on the north side of the center line of said highway, and the defendant, by and through his agent and employee, and in violation of law, carelessly, negligently and recklessly, was driving and operating his said large passenger automobile bus in an easterly direction on the north side of the center line of said highway; that the defendant did not drive or keep his said large passenger automobile bus upon his right half of said highway and he did not pass to the right of the plaintiff's automobile, nor did he give or yield to the plaintiff at least one-half of the main travelled highway, but on the contrary he operated and drove his said bus on the defendant's side of said highway, to-wit: On the north half of the travelled portion of said highway.

"(d) That immediately before and at the time of said collision the defendant was guilty of further negligence in that he, through his agent and employee, unlawfully drove and operated his said large passenger automobile bus with the front windshield and all the side and back windows of said bus, except a small

space on said windshield covered with dirt and mud, so as to obscure the vision of the driver of said bus, and that by reason thereof, the said driver was unable to see clearly the said road and any one traveling thereon."

Defendant interposed a general denial and pleaded contributory negligence, and upon the issues so joined the case was tried to a jury, which returned a verdict for plaintiff in the sum of $12,000. From the judgment thereon entered and from a denial of his motion for new trial, defendant has appealed.

Appellant maintains that the physical facts and credible direct testimony demonstrate that appellant's driver was in the exercise of due care at the time of the accident and that the negligence, if any there was, was upon the part of respondent, and that the evidence is insufficient to permit a jury to find either that appellant's driver was negligent or that respondent was free from contributory negligence. In this connection appellant urges that there is no credible evidence that appellant's driver was operating the bus at the time of the accident at a rate of speed in excess of forty miles per hour as alleged upon information and belief in the complaint. On this point we think appellant is quite correct. There is no such evidence. Of course, however, the mere fact that the bus was not being operated at a speed in excess of forty miles per hour would not, standing alone, require a finding that it was being operated without negligence. We have studied the record with care. As generally happens in cases of this kind, the testimony of the different witnesses is inconsistent in many respects. In addition to testimony as to the physical facts, such as the condition of the car and the bus after the accident, the wheel tracks in the road, etc., there was testimony concerning the accident, or attendant circumstances immediately preceding or following it, by respondent himself (who was alone in his car at the time) ; by appellant's driver who was operating the bus at the time of the accident; by another employee of appellant who was making the trip with the bus as relief driver; by one Lowe who was a passenger in the bus at the time; by one Stevens who was driving his team and wagon west on the highway in question and who was upon the highway some distance west of the point of the accident when it occurred; by one Dowling who had a wagon standing upon the south side of the highway from which he was unloading gravel

at a point west of the place of the accident but east of the location of Stevens and his wagon; by three men constituting the crew of a caterpillar tractor and grading outfit which was moving east along the south side of the highway and was some little distance east of the point of the accident when it occurred; and by one Teesdale who was driving his own car west upon the highway in question some little distance to the rear of respondent's car, being some eighty rods east of the point of the accident when it occurred. To undertake in this opinion to recite and analyze the testimony of all these witnesses would prolong the opinion unduly and would not be particularly helpful. Some little time prior to the collision respondent's car (going west) and appellant's bus (going east) were both traveling along the north side of the highway in such fashion that if each vehicle so continued, a head-on collision would result. As to the exact distance between the vehicles at this stage of the matter and the speed of each, the testimony is conflicting. The respective contentions of the parties as to the situation from this point forward may be stated broadly and without effort in detail about as follows: Respondent maintains that appellant's driver wrongfully and negligently continued to drive east on the north side of the highway; that there was not room for respondent, by turning to his right, to pass the bus, and the grade was so steep that he could not abandon it and pull down into the ditch to his right; that he somewhat slowed his car and the vehicles approached nearer and nearer until he (respondent) reasonably believed collision was unavoidable if he did not do something and therefore he swung to his left, toward the south of the road, and that just after he did that the bus swung to its right, also toward the south of the road, and the vehicles were then so close that respondent could not pull back to the north side of the road and they collided south of the center line of the road. Appellant, on the other hand, maintains that the bus, which had swung well to the south of the road in order to pass Stevens with his team and wagon who was traveling west on the north side of the road, was immediately thereafter compelled to swing to the north side of the road in order to go around the gravel wagon of Dowing which was standing on the south side of the road; that as soon as was safely possible after going around the gravel wagon the bus pulled at a gradual angle back to the south side of the road

and had been traveling due east well to the south of the center line of the road for at least six or seven rods before the collision; and that the proximate cause of the collision was the fact that respondent negligently and wrongfully drove his car clear to the south of the center of the road, whether because he became scared and used poor judgment, or because of the light of the setting sun in his eyes, or because he lost control of his car due to the speed at which he was driving and the condition of the roads which were wet, sloppy and heavy. Upon the entire record, and whatever might be the personal views of the judges of this court, we believe it was for the jury to say in this case whether or not appellant's driver was negligent and whether or not respondent was contributorily negligent.

Appellant further predicates error upon the giving of the following instructions to the jury over his exception:

"The Court charges you that if you find from the evidence that the plaintiff was guilty of contributory negligence under the rules of law announced in this charge, then your verdict should be for the defendant and even tho the defendant's driver may also have been guilty of such negligence unless you find the defendant's driver was guilty of reckless and wanton conduct as hereinafter stated; on the other hand if you find that the plaintiff was guilty of no negligence that contributed to his injuries, but that negligence on the part of the defendant was the proximate cause of the accident and the injuries complained of, or if plaintiff was guilty of negligence but defendant's driver was guilty of such reckless and wanton conduct as hereinafter stated, then your verdict should be in favor of the plaintiff. * * *

"So in this case, if you find that the driver of the defendant's bus was driving along the north side of the highway as he approached the plaintiff's car, and that with reckless indifference to the consequences he consciously and intentionally held to such side of the road until the two cars were so close there appeared to be imminent danger of collision, then your verdict should be for the plaintiff for such damages as you find he has suffered under the rules I shall give you. * * *

"You are instructed that under the law of this state it is the duty of the driver of a vehicle on all highways, except upon one way streets to drive his vehicle on his right half of such highway,

and in this case, if you find that the driver of defendant's bus at or about the time of the accident was driving the defendant's bus on his left half or on the north half of the highway, and that with reckless indifference to consequences he consciously and intentionally knowing that by his conduct he was endangering the life and property of other travelers on said highway, held 'to such side of the road until there appeared to be imminent danger of a collision between the bus and plaintiff's car, then the driver of such bus was guilty of negligence and the defendant would be liable to the plaintiff for such damages as he may have suffered by reason of the collision, and this would be true whether the plaintiff did just the right thing in turning to the left at the time he did, or whether he himself was guilty of any negligence which contributed to the accident."

The ultimate responsibility for the above instructions doubtless rests upon the decision of this court in the case of Carlson v. Johnke (1931) 57 S. D. 544, 234 N. W. 25, 72 A. L. R. 1352, which was printed in the advance sheets of the Northwestern Reporter (as the briefs herein state) during the trial of this case and brought first to the attention of the learned trial judge just before the preparation of his instructions. It was with no inconsiderable hesitation and misgiving (although deliberately and with a complete understanding of exactly what we were saying) that this court finally filed the opinion in the Johnke Case. It has frequently risen to haunt us (cf., Endorf v. Johnson [1932] 59 S. D. 549, 241 N. W. 519; Holdhusen v. Schaible [1932] 60 S. D. 275, 244 N. W. 392), and the situation in the present case well indicates the trouble that the Johnke opinion has caused ever since it was filed, and continues to cause. This court has never been of the view that there exist degrees of negligence per se, it being our opinion that negligence is absolute, consisting in the failure to exercise the degree of care which the ordinary reasonable man would use under the circumstances. Neither does this court approve the doctrine of comparative negligence (as was specifically pointed out in the case of Endorf v. Johnson, supra), whereby a jury may be permitted to attempt to measure the quantum of negligence of a contributorily negligent plaintiff as against the quantum of negligence displayed by the conduct of a defendant and award a recovery to plaintiff notwithstanding his contributory negligence if the

jury believe such contributory negligence greatly outweighed by defendant's negligence. It is and has always been the rule of this state that plaintiff's contributory negligence bars his recovery as against a negligent defendant regardless of the relative amount of fault chargeable to either party save only in those cases where the "last clear chance" doctrine may properly have application. Cf. Wolff v. Stenger (1931) 59 S. D. 231, 239 N. W. 181. As other courts which reject the doctrine of comparative negligence, we reject it, not because it is unsound as a matter of logic or technical theory or abstract speculation, but because experience has shown, as a practical matter, that it is not workable, there being no usable yardstick to measure the relative fault of the parties. We did not intend in the Johnke Case to adopt the doctrine of comparative negligence but the practical result has been that such construction has been placed on the Johnke Case by the courts and the bar and perhaps to some extent justifiably. We did not mean to say in the Johnke Case that a defendant may be negligent to such an extent or in such a manner (whether you affix to his negligence the epithets "gross," "wanton," "reckless," or what not) that a plaintiff can recover damages of such defendant for a negligent tort notwithstanding plaintiff's contributory negligence. We were trying to draw a distinction in the Johnke Case between a negligent defendant and one the quality of whose conduct passes entirely beyond negligence and approaches the quality of conduct exhibited by a defendant who has committed a voluntary, premeditated, and intentional tort. We were attempting to make a distinction which is not entirely easy to phrase and is still more difficult of application. By reason of the elements of consciousness that his conduct would in all probability produce the precise result which it did in fact produce, and complete, reckless, and wanton indifference as to very probable and apparent injury to another thereby, which we felt existed on the part of the defendant in the Johnke Case, we sought to recognize in that case a class of torts intermediate between negligent and intentional torts; passing beyond the negligent tort and partaking to some appreciable extent, though not entirely, of the nature of an intentional tort; and to hold that in such case plaintiff's contributory negligence did not constitute a defense. As a matter of academic theory, we think there can be no quarrel with the distinction we attempted to draw

in the Johnke Case, but, as a practical matter, subsequent experience convinces us that the distinction is unworkable and confusing and ought not to receive recognition. The actual result of that decision has been to import into our law a doctrine of which we disapprove, to wit, the doctrine of comparative negligence, notwithstanding the fact that we did not so intend. We believe that torts should continue in this state to be classified (as they were prior to the Johnke Case) as negligent or intentional and dealt with accordingly, contributory negligence being a defense in the case of the negligent tort and not in the case of the intentional tort, and we think the intermediate class of wanton and reckless, but not quite specifically intentional, tort that we undertook to set up in the Johnke Case cannot be successfully or satisfactorily maintained as a class of actionable wrongs subject to a different rule from that applicable to negligent torts. To this extent we think we should, and we do, expressly recede from and overrule the language of the Johnke Case.

▇ Upon the record in this case, we think it was within the province of the jury if they so determined to find that appellant's driver was negligent, but there is no evidence which would support the view that appellant's driver willfully, intentionally, or wantonly inflicted any injury upon respondent, or caused respondent to suffer any damage. And if the jury believed in this case (as they might very well have believed) that respondent was contributorily negligent, then such contributory negligence would be a complete defense. It is error to submit to the jury by the instructions a state of facts which there is no evidence tending to prove. Thompson on Trials (2d Ed. [Early]) § 2315; Burge v. Anderson (1931) 164 Wash. 509, 3 P. (2d) 131; City Weatherford v. Rainey (1931) 151 Okl. 183, 3 P. (2d) 153; Croak v. Croak (Mo. App. 1931) 33 S. W. (2d) 998; Gundelach v. Compaignie, etc. (Mo. Sup. 1931) 41 S. W. (2d) 1. And such error could hardly help being prejudicial to appellant in the instant case, since, under the instructions of the court, part, if not all, of the jurors may have awarded a recovery to respondent, notwithstanding their belief that he had been contributorily negligent.

The judgment and order appealed from are therefore reversed.

All the Judges concur.